IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| JEFF D., et al., | ) ) ) | Case No. CV-80-4091-S-BLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | **AMENDED MEMORANDUM** |
| | ) | **DECISION AND ORDER** |
| DIRK KEMPTHORNE, et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

Although the Court indicated that it would award Plaintiffs $2,520.00 for

Mr. Johnson's work on the motion to vacate, the Court inadvertently failed to add

that amount to the total in the Court's chart on page 21 of its decision.  In turn, the

Court failed to add the $2,520.00 to the total amount of the fee award.  The Court

amends its decision to correct that mistake.[1]

## INTRODUCTION

The Court has before it Plaintiffs' Petition for an Award of Attorney's Fees

and Costs (Docket No. 673), Defendant Kempthorne and Department of Health and

Welfare's ("DHW") Motion to Vacate Consent Decrees (Docket No. 681), DJC

---

[1] Adding an additional $2,520.00 to the award does not affect the Court's calculation of the amount of fees-on-fees.  Even with the additional $2,520.00, Plaintiffs still recovered approximately 64% of the fees they requested.  Therefore, the Court will not amend that portion of the decision.

**Amended Memorandum Decision and Order – Page 1**

Director Callicutt's Joinder in Governor and DHW Director's Motion to Vacate

Consent Decrees (Docket No. 683), Plaintiffs' Supplemental Petition and

Declaration for an Award of Attorney's Fees and Costs (Docket No. 698), and

Plaintiffs' Second Supplemental Petition and Declaration for an Award of Attorney

Fees and Costs (Docket No. 704).

## BACKGROUND

Following a lengthy compliance hearing, the Court issued its Findings of

Fact and Conclusions of Law in this matter on February 7, 2007.  The background

of this case is set forth in detail in that document.  The Court will not repeat the full

background of the case here.  Instead, the Court will simply note that the Court

concluded in its Findings of Fact and Conclusions of Law that the best way to

determine whether the defendants were in compliance with the consent decrees was

to analyze the Implementation Plan on an Action Item by Action Item basis.  In

doing so, the Court found that DJC had substantially complied with all Action

Items, and that DHW had substantially complied with all but the following Action

Items: 1K, 3B, 3D, 4G, 11F, 25D, 25E, 26C, 27B, 29J, 30B, 30C, 30D, 31E, 31I,

32C, 36B, 39B, 40E, 41C and 49I.  Accordingly, the Court ordered DHW to take

all steps necessary to substantially comply with those twenty-one Action Items

within 120 days of the date of the Order.  Thereafter, DHW produced

**Amended Memorandum Decision and Order – Page 2**

documentation explaining and supporting how it had complied with the Court's Order.  The defendants also filed motions to vacate the consent decrees pursuant to Federal Rule of Civil Procedure 60(b).

## ANALYSIS

### I.        Compliance With Remaining Action Items

As it did in its Findings of Fact and Conclusions of Law, the Court will address the remaining Action Items on an Action Item by Action Item basis.  The Court will not re-state the language of each Action Item.  Instead, the Court will refer to each Action Item by its numerical and alphabetical designation as referenced in the Matrix.  The parties can refer to the Implementation Plan or the Matrix for the specific language of an Action Item.  After referring to the numerical and alphabetical designation, the Court will list the facts related to the Action Item, and state whether DHW is in compliance with the Action Item.

### A.        Action Items

**1K:**   DHW contacted the chiefs of children's mental health within each region requesting names, addresses and phone numbers of parents on the regional and local councils.  DHW then provided a copy of the information to the Federation of Families.  DHW modified the Family Involvement Standard to require each regional children's mental health program to provide the name,

**Amended Memorandum Decision and Order – Page 3**

address, and phone number of new parent representatives on local or regional

councils to the Idaho Federal of Families within one week of their appointment to

the council. (Halligan Aff., ¶ 15). The Court finds that DHW has substantially

complied with Action Item 1K.

**3B:** DHW created a social marketing plan, which was implemented in

2004. Information was disseminated through the System of Care Conferences.

Additionally, the Idaho System of Care website was created and is available to

interested individuals in real time. The website identifies issues related to families,

youth, community partners, councils, together with medial materials and press

releases. (Sanders Aff., ¶¶ 4-8). The Court finds that DHW has substantially

complied with Action Item 3B.

**3D:** DHW made outreach recommendations for 2007-08, which included

continuing statewide children's mental health anti-stigma activities, continuing

information dissemination to the councils and communities, and continuing

information dissemination to parents and families. DHW indicated that the

information on the local councils and how to access them will be included in the

report at least annually. (Sanders Aff., ¶ 11). The Court finds that DHW has

substantially complied with Action Item 3D.

**4G:** DHW provided a copy of its targets for service provision to each of

**Amended Memorandum Decision and Order – Page 4**

the Regional Chiefs of Children's Mental Health.  DHW instructed the Chiefs on how to facilitate a discussion by the Council on establishing targets for their service provision.  The Regional Council Chairs presented information on the targets established by each Regional Council to the ICCMH.  (Edmonds Aff., ¶ 7). The Court finds that DHW has substantially complied with Action Item 4G.

**11F:**  DHW created the Quarterly DHW Juvenile Justice Report, which is a quarterly newsletter containing information on the Regional and Local Children's Mental Health Councils and how to access them.  The ICCMH approved the report as an outreach activity, and it is a mechanism for reporting to the courts and other justice officers on local councils and how to access them.  (Edmonds Aff ¶ 9).  The Court finds that DHW has substantially complied with Action Item 11F.

**25D:**  DHW created a method for determining future targets based on the formula for establishing targets as documented in the 1999 Needs Assessment of Idaho's Children with SED and Their Families.  DHW then created a annual service delivery goals for each region and statewide.  (Edmonds Aff., ¶ 11).  The Court finds that DHW has substantially complied with Action Item 25D.

**25E:**  DHW developed a method for determining spending on each service in each region.  DHW presented the information based on this method to the Behavioral Health Administrator and the Behavioral Regional Program Managers.

**Amended Memorandum Decision and Order – Page 5**

(Halligan Aff., ¶ 46; Ex. 25E).  The Court finds that DHW has substantially complied with Action Item 25E.

**26C:**  DHW created standards describing how DHW will monitor Crisis Response protocols.  DHW presented the standards to ICCMH.  (Edmonds Aff., ¶ 13).  The Court finds that DHW has substantially complied with Action Item 26C.

**27B:**  DHW finalized the information brochure on how financial eligibility is determined on a sliding fee scale.  DHW distributed the brochure to the regions, and it is available on the DHW website.  DHW indicates that the brochure will be provided to parents at the time of application.  (Halligan Aff., ¶ 56; Ex. 27B.b).  The Court finds that DHW has substantially complied with Action Item 27B.

**29J:**  DHW and Medicaid staff created a training presentation to be used in training council members.  DHW assigned individuals to conduct the EPSDT training for council members and agency staff.  DHW notified regional staff of the training schedule.  (Halligan Aff., ¶ 61).  The Court finds that DHW has substantially complied with Action Item 29J.

**30B:**  DHW provided a report on day treatment serviced to each Regional Chief of Children's Mental Health and requested that they place the review of regional day treatment services on their respective council agendas.  DHW also

provided the chiefs with an instruction sheet on how to facilitate discussion on gaps in day treatment. (Edmonds Aff., ¶ 15).  The Court finds that DHW has substantially complied with Action Item 30B.

**30C:**  DHW created a report based on the information gathered pursuant to Action Item 30B to be included as an appendix to the Community Report Card. The report was placed on the ICCMH website in May, 2007. (Edmonds Aff., ¶ 17). The Court finds that DHW has substantially complied with Action Item 30C.

**30D:**  DHW surveyed school districts for comments regarding then current mental health contracts.  Based on the survey, DHW revised the Guidance Document for school mental health.  DHW developed a decision unit, and the Idaho legislature approved a DHW budget which allows for the use of additional funding for non school based day treatment and keeps the funding for school based day treatment at a current expenditure level.  (Halligan Aff., ¶ 76; Edmonds Aff., ¶ 19).  The Court finds that DHW has substantially complied with Action Item 30D.

**31E:**  DHW developed a report on the utilization, outcomes, and gaps in Therapeutic Foster Care services in Idaho.  ICCMH moved to include the report in the 2007 Report to the Governor.  DHW sent the report to Idaho Governor C.L. "Butch" Otter in May, 2007.  Finally, the report was placed on the ICCMH

website.  (Edmonds Aff., ¶ 21).  The Court finds that DHW has substantially complied with Action Item 31E.

**31I:**   DHW developed the Idaho Therapeutic Foster Care Recruitment Plan based on information gathered from the Idaho Child Welfare Partnership and Foster Care Program Specialists.  The plan was submitted to the State Planning Council on Mental Health in April, 2007.  (Edmonds Aff., ¶ 23).  The Court finds that DHW has substantially complied with Action Item 31I.

**32C:**  DHW provided the regional Chiefs of Children's Mental Health with a report describing categories and data on DHW's utilization of Family Support services.  DHW requested that the chiefs place the report on the agenda for the following Regional Council meeting.  DHW received minute notes from the Regional Council meetings indicating that they had discussed family support services.  (Edmonds Aff., ¶ 25).  The Court finds that DHW has substantially complied with Action Item 32C.

**36B:**  DHW developed a review/evaluation report of the Acute Impatient Psychiatric Hospitals, including current capacity and existing gaps between the service and those preceding or following it.  DHW presented the report to the administrator of the Division of Behavioral Health, the Behavioral Health Program Managers, and to each of the Acute Child and Adolescent Psychiatric Inpatient

Hospital directors in Idaho. (Edmonds Aff., ¶ 17; Ex. 36B). The Court finds that DHW has substantially complied with Action Item 30C.

**39B:** DHW met with members of the Idaho Child Welfare Partnership concerning workforce developments. DHW reviewed recruitment and retention strategies. DHW then developed the Workforce Development Plan, which includes actions and time lines to address the shortages of children's mental health professionals. (Halligan Aff., ¶ 101). The Court finds that DHW has substantially complied with Action Item 39B.

**40E:** DHW conferred with psychiatrists in Idaho who work with children and adolescents. (Halligan Aff., ¶ 106). The Court finds that DHW has substantially complied with Action Item 40E.

**41C:** DHW compiled the Parent Run Services Report, and distributed the report to the Regional Chiefs of Children's Mental Health. DHW requested that the chiefs place the report on the agenda for their upcoming regional meetings. DHW provided instructions to the chiefs on how to present the report as a starting point for tracking parent run services. DHW requested and received meeting minutes from the regional meetings. The Regional Chairs presented the information on the parent run services to ICCMH in May 2007. (Edmonds Aff., ¶ 29). The Court finds that DHW has substantially complied with Action Item

41C.

**49I:**   DHW created and revised the Children's Mental Health manual,

which were distributed to each of the Children's Mental Health Chief.  (Lyles Aff.,

¶ 8; Ex. 49I).  The Court finds that DHW has substantially complied with Action

Item 49I.

## II.    Motions to Vacate

Pursuant to Federal Rule of Civil Procedure 60(b), defendants DHW and

DJC move the Court to vacate the Consent Decrees in this matter.  In this very

case, the Ninth Circuit set the standard for such a motion:

> Rule 60(b) of the Federal Rules of Civil Procedure
> provides a mechanism for parties to seek relief from a
> judgment when "it is no longer equitable that the
> judgment should have prospective application," or when
> there is any other reason justifying relief from the
> judgment. In *Rufo v. Inmates of the Suffolk County Jail*,
> 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992), the
> Supreme Court established a "flexible" standard to assess
> motions to modify or vacate consent decrees stemming
> from institutional reform litigation. A party must show
> that "a significant change in facts or law warrants the
> revision of the decree and that the proposed modification
> is suitably tailored to the changed circumstance." *Id*. at
> 393, 112 S.Ct. 748. The party seeking modification of the
> consent decree bears the burden of establishing that the
> Rufo standard is met. *Id*. at 384, 112 S.Ct. 748.

*Jeff D. v. Kempthorne*, 365 F.3d 844, 851 (9th Cir. 2004).  At the end of its

opinion, the Ninth Circuit "recognize[d] that state officials labor under significant

**Amended Memorandum Decision and Order – Page 10**

budgetary and administrative constraints." *Id.* at 855. The Ninth Circuit went on to suggest that "[p]erhaps once the state has made significant efforts to comply with the promises embodied in the consent decrees, it may be appropriate for the district court to vacate the consent decrees in this case." *Id.*

Today, the Court finally concludes that the defendants have fulfilled their burden under *Rufo*, having made significant efforts to substantially comply with their promises. Based on the Court's findings above, coupled with the Court's February 2007 Findings of Fact and Conclusions of Law, the Court concludes that relief from the Consent Decrees is justified.

It is regrettable that it took nearly three decades to resolve this matter. The Court also understands plaintiffs' concern that, without ongoing judicial supervision, the defendants' attitudes may change and they may soon resort to the same practices which precipitated this dispute and prolonged its resolution. The Court hopes not. However, federal court supervision of state agencies cannot be justified by mere conjecture as to what those agencies may or may not do in the future. Moreover, having federal courts engaged in long-term oversight of state agencies is exceedingly unhealthy to our federal system. At this point, the Court is satisfied with the defendants' efforts and concludes that nothing more can be asked of them. Still, the Court exhorts the defendants to continue acting in good faith

and moving along the path they have taken over the past few years.

## III.    Motion for Atty Fees

### A.    Standard For Awarding Atty Fees

The Ninth Circuit has determined that, in a civil rights class action, the standard to be applied to disputed billing items for compliance and monitoring work under a consent decree is whether the services were reasonably performed during the pendency of the consent decree. *See Gates v. Gomez*, 60 F.3d 525, 534 (9th Cir. 1995).[2]  "[U]nder this standard, outcome is relevant to whether the work performed was reasonable, but it is not the touchstone for a fee award." *Id*.

Like the defendants in *Gates*, the defendants here suggest that the Court should apply a prevailing party standard under 42 U.S.C. § 1988 to post-judgment monitoring and compliance work under the consent decree.  However, like the plaintiffs in *Gates*, Plaintiffs here have already met the section 1988 prevailing party standard with the entry of the consent decrees.  *Id*. (citing *Keith v. Volpe*, 833 F.2d 850, 857 (9th Cir.1987).  Accordingly, in reviewing Plaintiffs' petition for costs and fees, the Court will consider whether Plaintiffs services were reasonably performed during the pendency of the consent decrees.

---

[2] The Court recognizes that the parties in *Gates* had an actual agreement that the plaintiffs could seek recovery of costs and fees pursuant to 42 U.S.C. § 1988, and that no such agreement appears to exist here.  However, a review of section 1988 reveals that no such agreement is necessary in order to for it to apply.

**Amended Memorandum Decision and Order – Page 12**

**B.     Fee Award**

Throughout the almost thirty-year history of this case, Plaintiffs' counsel has periodically sought recovery of costs and fees for representing Plaintiffs.  In most, if not all instances, the parties have been able to agree on a reasonable award. Plaintiffs have therefore been fairly compensated for costs and fees incurred up through 2003, except for certain deferred fees.

At this time, Plaintiffs seek an award for monitoring work under the consent decrees from 2004 through 2007.  Clearly, the Court's Findings of Fact and Conclusions of Law reflect a markedly different result from previous findings by the Court.  However, considering the defendants' long history of noncompliance with the consent decrees, the Court finds that Plaintiffs' counsel's continued monitoring of the case up until the Court issued its Findings of Fact and Conclusions of Law was reasonable.  Surely, Plaintiffs' counsel's continued monitoring of this case contributed to the defendants' decision to finally take action and comply with the consent decrees.  The Court is inclined, therefore, to award Plaintiffs their costs and fees associated with monitoring the case from 2004 through 2007.

However, there does exist a major exception to the reasonableness of Plaintiffs' counsel's continued monitoring of the case.  That exception relates to

**Amended Memorandum Decision and Order – Page 13**

fees incurred during the compliance hearing held in September 2006.  In preparation for that hearing, the Court took a very hands-on approach in order to assist the parties in preparing for the hearing.  For example, the Court provided the parties with a room just down the hall from the Court's chambers, as well as direct access to the Court's Law Clerk assigned to the case, in order to facilitate settlement negotiations and narrowing of the issues to be presented at the compliance hearing.  Additionally, and significantly, prior to the compliance hearing, the Court informed the parties that it had determined that the best way to decide whether the defendants were in compliance with the consent decrees was to analyze the Implementation Plan on an Action Item by Action Item basis.

Even with the Court's guidance, Plaintiffs failed to present evidence at the compliance hearing in a manner consistent with the Court's clear statement that it would make its findings by analyzing the Implementation Plan on an Action Item by Action Item basis.  Moreover, prior to the hearing, Plaintiffs failed to concede issues where it appeared that the defendants[3] were clearly in compliance with the consent decrees.  The Court's Findings of Fact and Conclusions of Law, where the Court determined that the defendants were in compliance with the vast majority of

---

[3] To Plaintiffs' credit, Plaintiffs did reach agreement on the majority of issues related to Defendant DJC.

**Amended Memorandum Decision and Order – Page 14**

the Action Items, supports this conclusion.

Therefore, the Court will reduce by 90% Plaintiffs' award for time spent in connection with the compliance hearing  After reviewing Plaintiffs' counsel's affidavits in support of the petition for fees, the Court has determined that beginning September 1, 2006, and continuing through February 28, 2007, counsel worked almost exclusively on matters related to the compliance hearing. Accordingly, the Court will reduce Plaintiffs' fee award for that time period by 90%.[4]  A review of counsel's affidavits indicates that Mr. Belodoff billed $147,702.50, Ms. Reynolds billed $57,400.00, and Mr. Johnson billed $45,885 between September 1, 2006 and February 28, 2007.  Accordingly, the Court will subtract 90% of that amount, which equals $132,932.25 for Mr. Belodoff, $51,660.00 for Ms. Reynolds, and $41,296.50 for Mr. Johnson.

## C.      Hourly Rates

The defendants contend that Mr. Belodoff's hourly rate should be reduced from $275.00 per hour to $225.00 per hour.  The Court must determine a

---

[4] Certainly, counsel did some work related to the compliance hearing prior to September 1, 2006 and after February 28, 2007.  Likewise, counsel certainly worked on matters other than the compliance hearing between those dates.  However, the Court finds that these are minor exceptions to the general finding that counsel did most of their work related to the trial between these dates.  Accordingly, the best way to apply the Court's decision that Plaintiffs should only receive 10% of their fees associated with the compliance hearing is to reduce the fee award by 90% for the time entries between these dates.

reasonable hourly rate by considering the experience, skill and reputation of the attorney's requesting fees.  *See Schwarz v. Secretary of Health and Human Services*, 73 F.3d 895, 906 (9th Cir. 1995).  "A district court should calculate this reasonable hourly rate according to the prevailing market rates in the relevant community, which typically is the community in which the district court sits." *Id.* (internal quotations and citations omitted).  The relevant community in this case is Boise, Idaho, where this Court sits.

Mr. Belodoff states in his affidavit that he has specialized in representing plaintiffs in civil rights cases involving class actions in Idaho for almost thirty years.  He also indicates that he has been counsel of record in this case since 1980. The affidavit of J. Walter Sinclair further supports Mr. Belodoff's conclusions. The defendants offer the affidavit of Larry Hunter, an experienced Idaho litigator, who suggests that Mr. Belodoff's billing rate is excessive.

The Court is somewhat familiar with Mr. Belodoff's practice, given the fact that he often represents parties appearing before this Court.  The Court is therefore aware of the fact that Mr. Belodoff does, in fact, have significant experience with cases similar to this one.  The Court is also intimately familiar with the going rates for attorneys in Boise, Idaho with similar experience and expertise as Mr. Belodoff.  Based on that knowledge, coupled with Mr. Belodoff's and Mr.

**Amended Memorandum Decision and Order – Page 16**

Sinclair's affidavits, the Court finds that Mr. Belodoff's $275.00 billing rate is reasonable in this case.

### D.     Additional Objections

The defendants make several additional objections to Plaintiffs' fee petition. The Court will address each objection below.

- The defendants contend that Mr. Johnson prepared for, traveled to, and attended depositions where he was not needed.  The defendants suggest that because Mr. Johnson stopped attending depositions part way through the process, his attendance at the earlier depositions was superfluous.  The Court is not persuaded.  Mr. Johnson's services at some, but not all, of the depositions is reasonable, and Plaintiffs should be compensated for his time.

- The defendants contend that Mr. Johnson was not needed at trial in this matter.  The defendants also argue that none of Mr. Johnson's post-trial work was reasonable.  Mr. Johnson has worked with Mr. Belodoff on this case for years.  It was not inappropriate for Mr. Johnson to assist with the trial and post-trial matters.  However, as noted above, the Court will deduct 90% of both Mr. Belodoff's and Mr. Johnson's time spent on trial related matters.

**Amended Memorandum Decision and Order – Page 17**

- The defendants contend that an experienced attorney would not have taken as long as Ms. Reynolds in drafting and reviewing discovery. Ms. Reynolds' lower billing rate reflects her inexperience. The Court need not also reduce her billable hours to reflect her inexperience.

- The defendants suggest that there is no showing that many of the depositions taken by Plaintiffs advanced the case. The defendants argue that depositions were taken of witnesses who were not called at trial. The defendants therefore contend that time spent on depositions should be reduced by 90% to reflect the outcome of the trial. It is not uncommon for a party not to call all witnesses who were deposed. Not calling such witnesses does not, however, suggest that the depositions did not advance the case.

- The defendants contend that Plaintiffs should not recover fees for time spent responding to certain Requests for Admission ("RFAs") because such requests should have been, but were not, admitted. This is not an easy determination for the Court to make. However, it is the Court's experience that only a small percentage of RFAs are actually admitted. Given the large number of RFAs in this case, it is difficult to say which ones should have been admitted by Plaintiffs. Given the

**Amended Memorandum Decision and Order – Page 18**

Court's decision to deduct 90% of Plaintiffs' trial related hours, the Court feels that it has already remedied Plaintiffs' failure to limit the issues at trial.

- The defendants suggest that Plaintiffs should not recover fees for time spent preparing their proposed Findings of Fact and Conclusions of Law.  The Court has already deducted 90% of Plaintiffs' time spent on preparing their Findings of Fact and Conclusions of Law because that work was done between September 1, 2006 and February 28, 2007.

- Plaintiffs voluntarily reduced by 20% their fees incurred between June 2006 and December 2006.  Given the Court's determination to reduce by 90% Plaintiffs' fees incurred between September 2006 and February 2007, the Court will only apply Plaintiffs' voluntary reduction to fees incurred between June 2006 and August 2006.

- Mr. Johnson indicates that he had a "previous balance" due in the amount of $28,410.00, of which only $24,517.50 was paid.  Mr. Johnson adds the additional $3,892.50 to his February 2006 – June 2006 bill.  Stating that he has a "previous balance" does not sufficiently describe how the fees were incurred, and the Court will not award Plaintiffs these fees.

**Amended Memorandum Decision and Order – Page 19**

**E.     Costs**

Mr. Belodoff claims $12,687.22 in costs.  These costs are reasonable.  Mr. Johnson claims $904.12 in costs.  These costs are also reasonable.

**F.     Supplemental Fees**

Plaintiffs seek an award for fees associated with addressing the motion to vacate and fees-on-fees.

### 1.     Fees Related to Motion to Vacate

The Court will apply the same standard to the motion to vacate fees as it applied above – namely, whether counsel's services were reasonably performed during the pendency of the consent decree.  *See Gates v. Gomez*, 60 F.3d 525, 534 (9th Cir. 1995).[5]  As noted above, "under this standard, outcome is relevant to whether the work performed was reasonable, but it is not the touchstone for a fee award."  *Id*.

The Court concludes that although the defendants ultimately prevailed on their motion to vacate the consent decrees, Plaintiffs' counsel acted reasonable in opposing the motion.  Accordingly, the Court will award Plaintiffs their fees associated with the motion to vacate, which will include Plaintiffs' claim for

---

[5] The Court recognizes that the parties in *Gates* had an actual agreement that the plaintiffs could seek recovery of costs and fees pursuant to 42 U.S.C. § 1988, and that no such agreement appears to exist here.  However, a review of section 1988 reveals that no such agreement is necessary in order to for it to apply.

**Amended Memorandum Decision and Order – Page 20**

$14,685.00 for Mr. Belodoff's services, $5,337.50 for Ms. Reynolds' services, and

$2,520.00 for Mr. Johnson's services.[6]

### 2.     Fees-on-Fees

Based on the above analysis, the Court has determined that Plaintiffs are

entitled to $297,143.59 in fees and costs, not including the fees-on-fees.  The

following chart explains the Court's calculation:

|  | Mr. Belodoff | Ms. Reynolds | Mr. Johnson |
|---|---|---|---|
| Fees Claimed | $324,390.00 | 140,325.00 | 85,125.00 |
| 90% Reduction in Fees Related to Compliance Hrg. | ($132,932.25) | ($51,660.00) | ($41,296.50) |
| 20% Voluntary Reduction | ($36,091.00) | ($14,700) | ($7,346.50) |
| Additional Fees for Work on Motion to Vacate | $14,685.00 | $5,337.00 | $2,520.00 |
| Costs | $12,687.22 | N/A | $904.12 |
| Total | $182,738.97 | $74,498.50 | $39,906.12 |

Thus, Plaintiffs recovered approximately 64% of the fees and costs they

---

[6] In his fee bill, Mr. Johnson does not state which fees are related to the motion to vacate and which fees are related to the fees-on-fees issue.  Based on a review of the bill, the Court concludes that only 14.4 hours of his time was spent working on the motion to vacate (14.4 x $175.00 = $2,520.00)

**Amended Memorandum Decision and Order – Page 21**

requested.[7]  Guided by the Ninth Circuit decisions in *Thompson v. Gomez*, 45 F.3d 1365, (9th Cir. 1995) and *Gates v. Gomez*, 60 F.3d 525, 534 (9th Cir. 1995), the Court will award Plaintiffs 64% of their fees-on-fees.

Mr. Belodoff claims $26,895.00 and Ms. Reynolds claims $5,450.00 for work related to fees-on-fees.  The Court will award 64% of that amount, which equals $20,700.80.  With respect to Mr. Johnson, as with the motion to vacate, Mr. Johnson fails to specify which fees are related to the fees-on-fees issue.  Based on a review of the cost bill, the Court concludes that Mr. Johnson spent 17.5 hours on the fees-on-fees issue, resulting in a claim for $3,062.50.  The Court will award 64% of that amount, or $1,960.00.  Thus, the total award for fees-on-fees is $22,660.80.

### G.    Second Supplemental Request for Fees

Plaintiffs filed a second supplemental request for fees requesting fees incurred in drafting Plaintiffs' reply to its first supplemental request for fees. Plaintiffs indicated that Mr. Belodoff spent 13 hours on the brief.  The Court finds that the reply brief was practically unnecessary, and therefore Mr. Belodoff's 13 hours were unreasonable.  The Court finds that 3 hours would have been a

---

[7] Considering Plaintiffs' initial decision to reduce certain fees by 20%, the Court calculated that Plaintiffs claimed $461,883.44 in total fees and costs.

reasonable amount of time to spend on the reply brief.  Accordingly, the Court will award Plaintiffs an additional $528.00 in fees.[8]

## H.    Total Fees and Costs

Based on the above analysis, the Court will award Plaintiffs a total of $320,332.39 in fees and costs.  At this point, the Court will not designate which defendant is liable for what portion of the award.  Considering the fact that all of the amounts paid will come from state tax revenues, the Court will leave it to the defendants on how to apportion their responsibility for the award.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiffs' Petition for an Award of Attorney's Fees and Costs (Docket No. 673), Plaintiffs' Supplemental Petition and Declaration for an Award of Attorney's Fees and Costs (Docket No. 698), and Plaintiffs' Second Supplemental Petition and Declaration for an Award of Attorney Fees and Costs (Docket No. 704) shall be, and the same are hereby, GRANTED IN PART and DENIED IN PART as explained above.  The defendants shall pay Plaintiffs $320,332.39 in fees and costs.

IT IS FURTHER ORDERED that Defendant Kempthorne and Department

---

[8] The Court reached this amount by multiplying Mr. Belodoff's hourly rate by 3, which equals $825.00.  The Court then multiplied that amount by 64%, in accordance with the Court's analysis above, which equals, $528.00.

of Health and Welfare's ("DHW") Motion to Vacate Consent Decrees (Docket No. 681) and DJC Director Callicutt's Joinder in Governor and DHW Director's Motion to Vacate Consent Decrees (Docket No. 683) shall be, and the same are hereby, GRANTED, and that the consent decrees pending in this matter are VACATED.

The Court will enter a separate Judgment as required by Federal Rule of Civil Procedure 58.

DATED:  **November 2, 2007**

B. LYNN WINMILL
Chief Judge
United States District Court

**Amended Memorandum Decision and Order – Page 24**