UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEFF D., *et. al*,<br><br>Plaintiffs,<br><br>v.<br><br>BRAD LITTLE, *et. al*,<br><br>Defendants. | Case No. 4:80-cv-04091-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court is Plaintiffs' Motion for Relief from Order Awarding

Attorneys' Fees. Plaintiffs ask the Court to award $515,473.20 in attorneys' fees

for services rendered over 16 years ago. The Court will deny the motion because it

was not timely filed and because the requested fees were not reasonably incurred.

## BACKGROUND

### A.    The Consent Decrees

This lawsuit has been pending in one form or another for over 40 years.

Plaintiffs are a class of indigent children suffering from severe emotional

disabilities. In 1980, they sued Idaho state officials, alleging that these officials

were providing inadequate care and had thereby violated plaintiffs' constitutional

and statutory rights. The parties reached agreements intended to remedy the

deficiencies, and this Court entered three separate consent decrees embodying those agreements.

Under the consent decrees, the Idaho Department of Health & Welfare (IDHW) agreed to take certain specified steps. As required by the last of the three consent decrees, the parties submitted a compliance plan that would serve as a comprehensive blueprint for IDHW to satisfy the decrees. The Court eventually adopted a final compliance plan, known as the Implementation Plan, which included 252 action items to be completed by IDHW.

## B.    The Vacatur of the Consent Decrees

In September 2006, the Court conducted a 10-day compliance hearing. After the hearing, the Court concluded that IDWH had complied with 231 of the 252 action items and ordered the Department to take all steps necessary to substantially comply with the 21 outstanding items within 120 days. Thereafter, the Court concluded that IDHW had substantially complied with all action items and vacated the consent decrees. Significantly, however, even though the Court vacated the consent decrees over plaintiffs' objections, the Court determined plaintiffs were the "prevailing parties" in the litigation. *See Am. Order,* Dkt. 707 at 12. Accordingly, when plaintiffs' counsel sought a fee award for the monitoring work performed under the consent decrees between 2004 and 2007, the Court concluded counsel was entitled to an award so long as the services were reasonably performed. *Id.*

Applying that standard, the Court awarded plaintiffs' attorneys $320,332.39 in fees

and costs. Plaintiffs' counsel had sought a larger award, but the Court found that a

portion of the fees had not been reasonably incurred. As the Court put it at the

time:

> The Court is inclined . . . to award Plaintiffs their costs and fees
> associated with monitoring the case from 2004 through 2007. [¶]
> However, there does exist a major exception to the reasonableness
> of Plaintiffs' counsel's continued monitoring of the case. That
> exception relates to fees incurred during the compliance hearing
> held in September 2006.

*Id.* at 12-13. The Court reduced the fees incurred during the relevant period

(September 1, 2006 through February 28, 2007) by 90%. Additionally, plaintiffs'

counsel had voluntarily reduced their fees by 20% for fees incurred between June

2006 and December 2006. The Court applied that 20% reduction to fees incurred

between June and August 2006. *See id.* at 19. In the end, plaintiffs' counsel

recovered approximately 64% of their requested fees and costs. *See id.* at 21-22.

## C.    The Appeal

Plaintiffs appealed the Court's November 2007 order and judgment but did

not pursue the fee-reduction issue on appeal. Ultimately, plaintiffs successfully

argued that this Court had erred by applying the civil contempt standard in

determining whether to vacate the consent decrees. *See Jeff D. v. Otter,* 643 F.3d

278 (9th Cir. 2011). The Ninth Circuit explained that while the parties agreed that

the relevant standard was "substantial compliance"—that is, the correct, key

question was whether defendants had substantially complied with the consent decrees—this Court had erred by failing to require *Defendants* to come forward and demonstrate substantial compliance by a preponderance of the evidence. *Id.* at 285. Instead, the Court wrongly placed the burden on "the *Plaintiffs* to come forward and show, by clear and convincing evidence, that, first, the Defendants had 'violated the Action Items beyond substantial compliance,' and, second, 'that the violation was not based on good faith and reasonable interpretation of the judgment.'" *Id.* Additionally, the Ninth Circuit held that the Court erred by not explicitly considering whether the goals of the decrees and the Implementation Plan had been adequately served in deciding whether to vacate the decrees. *Id.* at 288-89.

In light of these holdings, the Ninth Circuit reversed this Court's order vacating the consent decrees and remanded the case for further proceedings. The Circuit did not disturb the Court's individual factual findings, however, despite Plaintiffs' urging that it do so. As the Circuit explained, "We have no way of determining whether and how these findings would change when the evidence is assessed by the district court with the burden of proof by a preponderance of the evidence placed on the Defendants to show substantial compliance with the Action Items." *Id.* at 287.

## D. The Post-Remand Settlement

On remand, the parties settled their substantive disputes. They also entered into a stipulation regarding attorneys' fees that had been incurred post-remand. The fee stipulation carved out disputes related to this Court's 2007 decision to reduce plaintiffs' requested fees. *See May 20, 2015 Stip.,* Dkt. 777-3, at 3. Because of that carve-out, plaintiffs are once again before this Court, challenging the fee reduction the Court applied back in November 2007.

## LEGAL STANDARD

Rule 60(b)(5) permits a district court, in its discretion, to "relieve a party or a party's legal representative from a final judgment, order, or proceeding" when (1) "the judgment has been satisfied, released, or discharged," or (2) "a prior judgment upon which it is based has been reversed or otherwise vacated," or (3) "it is no longer equitable that the judgment should have prospective application...." Fed. R. Civ. P. 60(b)(5); *see also Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004) (holding that Rule 60(b) motions committed to sound discretion of district court). Although Rule 60(b)(5) has three subparts, plaintiffs argue for relief based only on the second listed ground—that the Ninth Circuit vacated this Court's November 2007 judgment.

Generally speaking Rule 60(b) is remedial in nature and thus should be liberally applied. Still, though Rule 60(b)(5) motions must be brought within a

"reasonable time." *See* Fed. R. Civ. P. 60(c)(1). "What constitutes a reasonable time "depends on the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Ashford v. Steuart,* 657 F.2d 1053, 1055 (9th Cir. 1981).

## ANALYSIS

### A.    The Motion is Untimely

According to plaintiffs' logic, the moment the Ninth Circuit handed down its 2011 decision, their attorneys were automatically entitled to an award of the disputed fees. All they had to do was ask. Yet they waited 12 years before filing this motion.

The Court is willing to overlook the four years following the Ninth Circuit's 2011 decision because the parties entered into lengthy settlement negotiations which resulted in their agreeing to disagree about the disputed fees. But that leaves the eight years between June 2015 and June 2023. And those eight years are filled with long, insufficiently explained silences. For starters, plaintiffs' counsel waited until December 2016—roughly 18 months after the fee stipulation was signed—before sending a letter to defense counsel raising the fee issue. In that letter, counsel offered to settle the matter for a $150,000 payment to Howard Belodoff, one of the three attorneys who had worked on the matter in 2006 and 2007. *Dec.*

*20, 2016 Letter, Ex. 4 to Belodoff Dec.,* Dkt. 777-3.[1] After sending that December 2016 letter, Mr. Belodoff waited another four and one-half years before following up with defense counsel in writing. On June 23, 2021, he sent an email to attorney Chelsea Kidney, asking for a discussion of what he described as his "past due fees and attempts to resolve this issue." *Belodoff Dec.*, Ex. 5, Dkt. 777-3. Once again, defense counsel did not respond in writing, and, once again, Mr. Belodoff waited a lengthy period—this time 15 months—before sending another written communication.

In September 2022, Mr. Belodoff sent a letter to defense counsel, again asking about the fee issue. This time, defense counsel responded in writing. In a January 4, 2023, letter, defense counsel formally notified Mr. Belodoff that defendants did not believe the disputed fees were owing, and, therefore, did not intend to pay them. Within that letter, defense counsel stated, "We have learned that this same request has been made and denied in the past, though perhaps not as formally as you deemed necessary, Howard." *Jan. 4. 2023 Letter,* Dkt. 777-4, at 1. Roughly six months after receiving that January 4, 2023 letter, plaintiff filed the pending motion.

---

[1] Mr. Belodoff said that "[t]he other attorneys have not been involved in the case for many years and have not requested any attorney fees." *Id.*

On this record, the Court cannot find that the motion was filed within a "reasonable time." As noted above, key considerations here include (1) prejudice to the defendants; (2) finality; and (3) and the length of and reasons for the delay. The first factor weighs in favor of the plaintiffs, as defendants have not claimed any specific prejudice or surprise. But the second and third factors weigh heavily in defendants' favor.

Regarding finality, memories fade, claims grow stale, and relevant details are lost to the sands of time. Mr. Belodoff alludes to this problem in his declaration, where he referred to "recoverable" written communications. He also refers—only generally—to "numerous conversations" he had with defense counsel over the "subsequent years." *See Belodoff Dec.,* Dkt. 777-2, ¶ 2. In short, allowing an issue to fester for over a decade does not serve the interests of finality. Just the opposite.

Turning to the length of and reasons for the delay, courts have found unexcused delays of much shorter than 12 years unreasonable.[2] Counsel argues that

---

[2] *See, e.g., Morse-Starrett Prods. Co. v. Steccone*, 205 F.2d 244 (9th Cir. 1953) (insufficiently explained 22-month delay in bringing Rule 60(b) motion unreasonable); *James v. United States*, 603 F. Supp. 2d 472, 479 (E.D.N.Y. 2009) (unexplained 25-month delay in bringing Rule 60(b)(5) motion unreasonable); *Moses v. United States*, 97 CIV 2833, 2002 WL 31011864, at *2 (S.D.N.Y. Sept. 9, 2002) (listing decisions that rejected 60(b) motions on timeliness grounds for delays ranging from 10 to 20 months) (citations omitted); *see also United States v. Roccisano*, 89 CR.206 (PKC), 2005 WL 3543695, at *2 (S.D.N.Y. Dec. 28, 2005) (Continued)

the delay here is excusable because during this entire time, he was raising the issue

with defendants. But at some point well before 12 years had elapsed, it was

incumbent upon plaintiffs' counsel to act and clarify, rather than to simply express

frustration with defense counsel every so often. And counsel cannot overcome the

lengthy silences detailed above with a single, general statement that he had

"numerous" conversations with defense counsel over the decade-plus that this

issue was ongoing. *See id.* Finally, counsel's heavy reliance on his assertion that, at

some unspecified point after June 2021, one of the attorneys working at the AG's

office (Chelsea Kidney) told him defense counsel would negotiate the fee issue in

good faith, is misplaced. Specifically, Mr. Belodoff points to his September 2022

letter to defendants. Within that September 2022 letter, Mr. Belodoff pointed back

to his then 15-month-old, June 2021 letter to Ms. Kidney—saying that in response

to that June 2021 letter, Ms. Kidney had said "the 'parties previously agreed to

negotiate fees in good faith to reduce the costs of implementation' and the

Department was willing to negotiate in good faith towards resolution.'" *Sept. 21,*

*2022 Letter from Belodoff to Kidney, Garrett & Stretch, Ex. 6 to Belodoff Dec.*,

Dkt. 777-4.

---

(finding petitioner's 60(b) motion untimely because he had waited for approximately 25 months
to file it).

As an initial matter, the Court will overrule defendants' hearsay objection to Ms. Kidney's statement. Plaintiffs rightfully point out that such a statement is admissible as an exception to the hearsay rule under Federal Rule of Evidence 801(d)(2)(A) and (C).

But Ms. Kidney's statement does not show that plaintiffs acted within a reasonable time. Based on the correspondence chain before the Court, the Court can't even tell whether Ms. Kidney's statement about being willing to negotiate relates to the disputed fees at issue in this motion. Rather, the email she responded to raised various fee issues, not just issues related to the disputed fees. *See Ex. 6 to Belodoff Dec.*, Dkt. 777-4. And, more substantively, even if Ms. Kidney *was* referring to the disputed fees, plaintiffs' counsel still hasn't adequately explained the lengthy periods of inaction both before and after sending the June 2021 letter. As already noted, counsel's vague, general assertions that he had numerous conversations with defense counsel over the years is insufficient to explain away these periods of silence.

In sum, having considered the relevant factors here, the Court cannot find that plaintiffs brought their motion in a reasonable time, as required by Rule 60. Accordingly, the Court will deny the motion as untimely.

**B.      The Motion Lacks Merit**

Alternatively, the Court will deny the motion on the merits. Plaintiffs

contend that "[w]hen the Ninth Circuit reversed the Court's compliance

determination as a matter of law, the legal and factual basis justifying the 90% and

20% reductions in attorney fees were no longer applicable to the attorney fee

award." *Mtn. Mem.*, Dkt. 777-1 at 9. The Court disagrees. The fact that the Ninth

Circuit said this Court applied the wrong standard in deciding whether to vacate

the consent decrees does not negate the Court's reasons for reducing plaintiff's

counsel's requested fee award in the first place. It bears repeating that before the

appeal in this matter, the Court determined *plaintiffs* were prevailing parties and

thus entitled to a fee award. And the Court did not reduce the fees simply because

it decided the consent decrees should be vacated. Rather, the fees were reduced

because plaintiffs' counsel did not reasonably incur them. Indeed, even if the Court

had decided to leave the consent decrees in place after the 2007 compliance

hearing, it still would have reduced plaintiffs' fee award for the reasons explained

at the time.

As the Court explained in 2007, plaintiffs' attorneys' fees were reduced

because, among other things, "prior to the hearing, Plaintiffs failed to concede

issues where it appeared that the defendants were clearly in compliance with the

consent decrees." *Order,* Dkt. 707, at 14. Those sorts of factual determinations

would have remained in place regardless of which standard the Court applied—meaning that the fee reductions would likewise remain in place.

Similarly, regardless of who prevailed at the compliance hearing, plaintiffs' counsel unreasonably incurred fees by not heeding the Court's guidance in preparing for that hearing. The Court had informed the parties it intended to make its findings on an action-item-by-action-item basis, yet plaintiffs failed to present evidence consistently with that instruction. Granted, on appeal, the Ninth Circuit said the Court could not limit itself to considering only the action items. But that doesn't mean the Court would have totally abandoned the issue-by-issue method of presentation. As the Court sees it, with the Ninth Circuit's ruling in place, the Court still would examine each action item individually (and thus asked counsel to present evidence to accommodate that goal) and then, more broadly, asked whether the general goals of the consent decree had been accomplished. *See Jeff D.*, 643 F.3d at 288-89. Nothing about the Ninth Circuit's ruling indicates that such an approach to the compliance hearing was erroneous, or even inadvisable, for that matter. To the contrary, the *Jeff D.* Court recognized that compliance with the action items might be all that was needed to satisfy some of the overall purposes of the decrees. *Id.* at 289. Thus, plaintiffs' failure to heed the Court's instruction regarding presentation of evidence at the compliance hearing was unreasonable before the Ninth Circuit reversal and it remains so afterward.

More generally, the Court notes that after remand, a relatively small universe of factual determinations, if any, would have changed based on application of a different standard. After all, the key question would remain the same: Have defendants substantially complied with Action Item X? And, more broadly: Have the goals of the Consent Decree been accomplished? Under these circumstances, the attorneys' fees that had been unreasonably incurred would not simply transform themselves into reasonable fees. In bringing their motion, plaintiffs don't engage with that more difficult, nuanced question. Instead, they present the bluntest of arguments, effectively saying, "We prevailed on appeal so the district court has no choice but to undo the earlier fee reduction." For the reasons just explained, the Court is not persuaded by that argument.

And plaintiff's reliance on *California Medical Association v. Shalala*, 207 F.3d 575 (9th Cir. 2000) is misplaced because the case is distinguishable. In *Shalala*, the district court awarded plaintiff damages under 42 U.S.C. § 1983 and statutory attorney's fees as well because the plaintiff was the "prevailing party." *Id.* at 576. The defendant appealed the merits of the judgment, and the Ninth Circuit reversed. *Id*. After reversal, the defendant moved for relief from the attorney's fees award under Rule 60(b)(5) in the district court. *Id.* The district court denied the motion, saying that the plaintiff should have appealed. The Ninth Circuit reversed, holding that the district court abused its discretion, even though the defendant did

not appeal the attorney's fees award, because the merits judgment "provided the ground on which [the plaintiff] based their motion for fees," so the "reversal of the merits remove[d] the underpinning of the fee award." *Id.* at 577-78.

*Shalala,* then, presented a straightforward, binary situation – plaintiff won the day in district court and was awarded fees. Defendant—the losing party across the board in district court—then appealed and won. In that straightforward situation, it almost goes without saying that defendant should no longer have to pay the fees. That is not the case here. Rather, as has been noted several times now, *plaintiffs* were deemed the prevailing party in the trial court. So *Shalala* is distinguishable on that basis alone. And *Shalala* is further distinguishable here because the Ninth Circuit didn't upset this Court's substantive factual determination regarding compliance.

Finally, the Court is not persuaded by plaintiffs' argument that this Court should, in an exercise of its ancillary jurisdiction, order defendants to pay the disputed fees. For the reasons already explained, the motion was untimely and the fees were not reasonably incurred. The fact that courts have ancillary jurisdiction to resolve attorneys' fees disputes would not change the outcome.

## ORDER

### IT IS ORDERED that:

1. Plaintiffs' Motion for Relief from Order Awarding Attorneys' Fees (Dkt.

777) is **DENIED**.

2. Defendants' evidentiary objection (Dkt. 781) is **OVERRULED**.

DATED: November 1, 2023

B. Lynn Winmill
U.S. District Court Judge